```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF TENNESSEE
                    WESTERN DIVISION
```

| | |
|---|---|
| ROY A. TOWNS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   No. 17-cv-02603-SHM-tmp |
| | ) |
| TENNESSEE DEPARTMENT OF | ) |
| AGRICULTURE, | ) |
| | ) |
|     Defendant. | ) |

## REPORT AND RECOMMENDATION

Before the court[1] is defendant Tennessee Department of Agriculture's ("TDA") Motion for Summary Judgment, filed on December 14, 2018. (ECF Nos. 42; 43.) *Pro se* plaintiff Roy Towns responded on January 10, 2019. (ECF No. 47.) For the following reasons, the undersigned recommends that TDA's motion be granted.

### I. PROPOSED FINDINGS OF FACT

This is a sex discrimination and retaliation case brought against TDA under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (ECF No. 9 at 1.) Since May 5, 2005, Towns has been employed by Shelby County Health Department ("Shelby County") as an environmentalist.

---

[1]Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States magistrate judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate.

(ECF No. 9 at 3.)  Towns is not, nor has he ever been, a direct employee of TDA.

Under Tennessee law, TDA is responsible for ensuring "that foods offered for public consumption in Tennessee are safe as prepared, processed, served, packaged, and delivered." Tenn. Code Ann. § 53-8-202.  To accomplish this goal, TDA is permitted to "[e]nter into agreements or contracts with the Shelby, Davidson, and Knox county health departments" and is authorized to "exercise oversight and evaluation of performance of the county health department or departments and terminate the agreement or contract for cause immediately, or otherwise upon reasonable notice." Tenn. Code Ann. § 53-8-204(7)(c).  TDA and Shelby County have entered into a contract, which sets forth their relationship as follows:

> The parties hereto, In the performance of this Contract, shall not act as employees, partners, joint ventures, or associates of one another. It is expressly acknowledged by the parties hereto that such parties are Independent contracting entities and that nothing in this Contract shall be construed to create a[n] employer/employee relationship or to allow either to exercise control or direction over the manner or method by which the other transacts its business affairs or provides its usual services. The employees or agents of one party shall not be deemed or construed to be the employees or agents of the other party for any purpose whatsoever.

(ECF No. 43-1 at 10 ¶ D.13.)

Under the contract, Shelby County is required to "conduct regular inspection of every food establishment . . . that has a

physical address within Shelby County." (Id. at 3 ¶ A.2.a.) These inspections must be completed in accordance with Tennessee law, the rules and regulations promulgated under those laws, and "any directives of [TDA], including the use of inspection methods, documents, reports, or other material to perform or document the inspections." (Id. at 3 ¶ A.2.c.) Shelby County is responsible for training its employees regarding how to inspect the food establishments; however, the training must be conducted in accordance with a training curriculum that TDA provides.[2] (Id. at 3 ¶ A.2.e.) Additionally, TDA directs Shelby County "on practices for training its personnel inspectors . . . [and] provide[s] training aids and materials, as available, for [Shelby County's] training of its personnel inspectors." (Id. at 6 ¶ A.5.d.(1).) To ensure Shelby County's inspectors are being properly trained, TDA monitors Shelby County's training of these inspectors. (Id. at 6 ¶ A.5.d.(2).) TDA "shall provide annual instruction to [Shelby County's] personnel inspectors regarding refresher training and changes or complements to any

---

[2] Additionally, one "trainer-level" employee from Shelby County must attend continuing educational courses that are offered by TDA in Nashville. (Id. at 3 ¶ A.2.e.) Shelby County, "in its sole discretion, shall integrate the subject material of such continued learning into its implementation of the food safety program under the act, provided that [Shelby County] and its inspection personnel shall be responsible for the subject matter of continued education opportunities in all state audits conducted pursuant to th[e] contract." (Id.)

- 3 -

applicable program laws, rules, policies, or procedures." (Id. at 6 ¶ A.5.d.(3).)

The contract also gives TDA the ability to annually audit, on a pass/fail basis, "up to ten percent (10%) of [Shelby County's] inspection personnel for effective implementation of state program standards." (Id. at 5 ¶ A.5.a.(3).) If an inspector fails the audit, TDA will inform the inspector why he or she failed and may conduct a follow-up audit within ninety days. (Id.) In addition, the inspector who failed the audit is prohibited from conducting inspections until he or she passes the follow-up audit or until TDA "otherwise approves the inspector for Inspections based on [Shelby County's] communicated efforts to improve the inspector's performance and its confidence that the inspector may perform inspection under th[e] Contract to a satisfactory level." Id.

On October 13, 2015, TDA audited Towns and a fellow inspector, Lillie Roberts. (ECF No. 9 at 7.) Subsequently, on October 27, 2015, Towns received an email containing his and Roberts's individual audit results. (ECF Nos. 9 at 7; ECF No. 9-3 at 19; ECF No. 9-5 at 3, 5.) While Roberts was praised for her performance during the audit, Towns failed the audit. TDA requested an action plan from Shelby County describing the remedial training that it would provide to Towns. (ECF No. 9-3 at 19; ECF No. 9-5 at 3.) Towns claims that these audit results

were inconsistent with his and Roberts's prior job performances, arguing that he had an "exemplary" track record while Roberts was the cause of "several complaints regarding [her] poor quality/incomplete inspections." (ECF No. 9-3 at 20 to 21.) On October 28, 2015, Towns was informed that he could no longer conduct inspections and had to attend remedial training. (ECF No. 9 at 7.) Towns filed a charge of sex discrimination and retaliation on November 9, 2015, with the EEOC. (ECF No. 9-1 at 2.) In the EEOC charge, Towns stated "[TDA] indicated that I failed an audit and a female employee did not. I believe that my employer told the State agency's auditor of my previous complaints of discrimination." (ECF No. 9-1 at 2.)

## II. PROPOSED CONCLUSIONS OF LAW

Federal Rule of Civil Procedure 56(a) provides that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When assessing whether to grant summary judgment, a judge "may not 'make credibility determinations or weigh the evidence,' because those are 'jury functions.'" Jordan v. Kohl's Dep't Stores, Inc., 490 F. App'x 738, 741 (6th Cir. 2012) (citation omitted) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). Instead, the judge must determine "whether the evidence presents a sufficient disagreement to require

- 5 -

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Block v. Meharry Med. Coll., 723 F. App'x 273, 277 (6th Cir. 2018) (quoting Anderson, 477 U.S. at 251-52). "In resolving a summary judgment motion, th[e] court must view the evidence in the light most favorable to [the nonmovant]." Huckaby v. Priest, 636 F.3d 211, 216 (6th Cir. 2011) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

"However, the party opposing the summary judgment motion must 'do more than simply show that there is some metaphysical doubt as to the material facts.'" Highland Capital, Inc. v. Franklin Nat'l Bank, 350 F.3d 558, 564 (6th Cir. 2003) (quoting Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 800 (6th Cir. 1994)). "[T]o survive summary judgment, [the nonmovant] must provide evidence 'beyond his pleadings and his own conclusory statements, to establish the existence of specific triable facts.'" Gordon v. Louisville-Jefferson Cty. Metro Gov't, No. 3:08-cv-0029, 2011 WL 777939, at *4 (W.D. Ky. Feb. 28, 2011) (quoting Maki v. Laako, 88 F.3d 361, 364 (6th Cir. 1996)); see also Butler v. Drive Auto. Indus. of Am., Inc., 793 F.3d 404, 410 (4th Cir. 2015) ("To overcome a motion for summary judgment, however, the nonmoving party may not rely merely on allegations or denials in its own pleading but must set out specific facts showing a genuine issue for trial." (internal citation and

quotation omitted)).  The nonmovant may survive summary judgment by designating "specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" Phillips v. UAW Int'l, 149 F. Supp. 3d 790, 798 (E.D. Mich. 2016) (quoting Anderson, 477 U.S. at 252).

**A.   Qualifying as an Employer Under Title VII**

"Title VII makes it unlawful for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." Singfield v. Akron Metro. Hous. Auth., 389 F.3d 555, 561 (6th Cir. 2004) (internal citation and quotation omitted).  "Title VII [also] makes it unlawful 'for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'" White v. Adena Health Sys., No. 2:17-cv-593, 2018 WL 3377087, at *3 (S.D. Ohio July 11, 2018) (quoting 42 U.S.C. § 2000e-3(a)).

Title VII defines an employer as "a person engaged in an industry affecting commerce who has fifteen or more employees

for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b). Under Title VII, an employee is defined as "an individual employed by an employer." 42 U.S.C. § 2000e(b). "The circularity of this definition renders it quite unhelpful in explaining whom Congress intended to include as an employee in the workplace." Marie v. Am. Red Cross, 771 F.3d 344, 352 (6th Cir. 2014) (citing Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323 (1992)). "[W]hen Congress uses the term 'employee' without defining it with precision, courts should presume 'that Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine.'" Phillips, 149 F. Supp. 3d at 803 (quoting Marie, 771 F.3d at 352).

Whether TDA is Towns's employer "for purposes of Title VII, '[i]n the absence of a conflict of material fact, . . . is appropriate for the court to resolve . . . as a matter of law.'" Bryson v. Middlefield Volunteer Fire Dep't, Inc., 656 F.3d 348, 352 (6th Cir. 2011) (quoting Simpson v. Ernst & Young, 100 F.3d 436, 439 (6th Cir. 1996)); see also Sanford v. Main St. Baptist Church Manor, Inc., 449 F. App'x 488, 492 (6th Cir. 2011) ("In the absence of disputed material facts or the possibility of conflicting inferences to be drawn from undisputed facts, employment status is a question for the court to resolve as a

- 8 -

matter of law." (citing Lilley v. BTM Corp., 958 F.2d 746, 750 n.1 (6th Cir. 1992)).

When a Title VII plaintiff contends that he or she is jointly employed by separate entities, the Sixth Circuit and district courts from this circuit have applied two different tests to determine who qualifies as an employer. The first test, which comes from the Supreme Court's decision in Darden, was applied by the Sixth Circuit in Sutherland v. Mich. Dep't of Treasury, 344 F.3d 603 (6th Cir. 2003), where it recognized that "[t]he determination of whether a particular entity is an employer of a Title VII plaintiff involves an examination of whether the alleged employer exercises control over the manner and means of the plaintiff's work." Id. at 612 (citing Darden, 503 U.S. at 323); see also Phillips, 149 F. Supp. 3d at 803-05 (applying Darden to determine if the plaintiff, who was directly employed by MGM, was also an employee of a union that represented casino workers employed by MGM). In Darden, the Supreme Court stated:

> [i]n determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method

>of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

503 U.S. at 323-24 (internal citation and quotation omitted).

A different test, referred to as the "joint employer" or "control" test, has also been used by the appellate and district courts within this circuit. See E.E.O.C. v. Skanska USA Bldg., Inc., 550 F. App'x 253, 255-56 (6th Cir. 2013); Sanford, 449 F. App'x at 492; Turner v. City of Memphis, No. 2:17-cv-2447, 2018 WL 283752, at *5-6 (W.D. Tenn. Jan. 3, 2018) (Mays, J.); Elkin v. McHugh, 993 F. Supp. 2d 800, 806 (M.D. Tenn. 2014). This test has been described by the Sixth Circuit as follows:

>The basis of the [joint employer] finding is simply that one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer. Thus, the "joint employer" concept recognizes that the business entities involved are in fact separate but that they share or co-determine those matters governing the essential terms and conditions of employment.

Swallows v. Barnes & Noble Book Stores, Inc., 128 F.3d 990, 993 n.4 (6th Cir. 1997) (internal citation and quotation omitted). "The major factors in this determination are the ability to hire, fire, and discipline, affect compensation and benefits, and direct and supervise performance." Sanford, 449 F. App'x at 492.

This conflict regarding the appropriate test to utilize when analyzing whether an employee is jointly employed by separate entities extends well beyond this circuit. A thorough discussion of these conflicting tests can be found in the Fourth Circuit's opinion in Butler, 793 F. 3d at 404. In that case, the plaintiff was hired by a staffing agency to work at a company that manufactures car parts. Id. at 406. The plaintiff filed a Title VII lawsuit against both the staffing agency and the manufacturer. Id. The district court concluded that the plaintiff was not employed by the manufacturer for Title VII purposes and therefore granted the manufacturer's summary judgment motion. Id. On appeal, the Fourth Circuit affirmed in part and reversed in part. Id. The court initially agreed with the district court's conclusion that multiple distinct entities may qualify as a Title VII employer for a single employee. Id. at 408 ("[W]e conclude that the joint employment doctrine is an appropriate construction of Title VII, and so affirm the district court on that issue."). The court then reversed the district court's application of the joint employer test. See id. at 410 ("We find that the district court conducted an inappropriate analysis under our articulation of the joint employment doctrine today.").

In making that determination, the court reviewed three different formulations of the test that courts across the

- 11 -

country have applied. The first test described, which the Butler court called the "control" test, is the same as the "joint employer" test that the Sixth Circuit applied in both Sanford and Skanska. Id. at 410-11 ("Drive contends that this Circuit should adopt the 'control' test, which is drawn solely from basic principles of agency law. Some other circuits and district courts in this Circuit use the control test." (citing Skanska, 550 F. App'x at 256)). The court then discussed another test, the "economic realities" test, which "differs from the control test in that it focuses on 'degree of economic dependence of alleged employees on the business with which they are connected that indicates employee status.'" Id. at 411-12 (quoting E.E.O.C. v. Zippo Mfg. Co., 713 F.2d 32, 37 (3d Cir. 1983)). Last, the court described and subsequently adopted a third test, which it called the "hybrid" test. Id. The hybrid test instructs courts to consider a modified version of the Darden factors when determining if a particular defendant qualifies as an employer under Title VII. Id. at 414 (describing the hybrid test's nine factors and then applying those factors to conclude that the plaintiff was employed by the manufacturer for Title VII purposes).

Needless to say, courts do not uniformly apply the same standards in determining who qualifies as an employer under Title VII. E.E.O.C. v. Glob. Horizons, Inc., No. 16-35528, __

F.3d __, 2019 WL 453482, at *6-7 (9th Cir. Feb. 6, 2019) (applying Darden); Al-Saffy v. Vilsack, 827 F.3d 85, 96-97 (D.C. Cir. 2016) (applying a joint employer test, similar to the one applied in the Sixth Circuit, focusing almost exclusively on the degree of control that the putative employer had over the Title VII plaintiff); Casey v. Dep't of Health and Human Servs., 807 F.3d 395, 404-05 (1st Cir. 2015) (applying a 15 factor test, resembling the Darden factors, found within an EEOC Compliance Manual); Faush v. Tuesday Morning, Inc., 808 F.3d 208, 213-14 (3d Cir. 2015) (applying Darden); Whitaker v. Milwaukee Cty., Wisconsin, 772 F.3d 802, 810 (7th Cir. 2014) ("[W]e have stated that an entity other than the actual employer may be considered a joint employer only if it exerted significant control over the employee. . . . Factors to consider in determining joint employer status are (1) supervision of employees' day-to-day activities; (2) authority to hire or fire employees; (3) promulgation of work rules and conditions of employment; (4) issuance of work assignments; and (5) issuance of operating instructions." (internal citation and quotation omitted)); Bristol v. Bd. of Cty. Comm'rs of Cty. of Clear Creek, 312 F.3d 1213, 1218 (10th Cir. 2002) ("This joint-employer test acknowledges that the two entities are separate, but looks to whether they co-determine the essential terms and conditions of employment.").

The court finds, based upon the facts and circumstances of the present case, that the appropriate test to apply is the "joint employer" or "control" test described in Skanska, which is the most frequently utilized test within this circuit.[3] See Skanska, 550 F. App'x at 255-56; Sanford, 449 F. App'x at 492; Turner, 2018 WL 283752, at *5-6 (Mays, J.); Phipps v. Accredo Health Grp., Inc., No. 2:15-cv-2101, 2016 WL 3448765, at *9 (W.D. Tenn. June 20, 2016); Reid v. Quality Serv. Integrity, No. 2:14-cv-324, 2016 WL 229337, at *2 (E.D. Tenn. Jan. 19, 2016); Elkin, 993 F. Supp. 2d at 806.

**B. TDA is not Towns's Employer for Title VII Purposes**

TDA argues that Towns is not a TDA employee. (ECF No. 43 at 5.) It is undisputed that Towns is directly employed by Shelby County and not TDA. In his deposition, Towns acknowledged that he is not, nor has he ever been, a TDA employee, although he feels that he has been "treated like an employee of" TDA. (ECF No. 47-1 at 15-16.) The issue, however, is not whether Towns perceives himself as being an employee of

---

[3]On September 12, 2018, the undersigned submitted a report and recommendation on TDA's Motion to Dismiss pursuant to Rule 12(b)(6). (ECF No. 18.) The undersigned applied the Darden test in analyzing that motion and recommended that the motion to dismiss be denied. (ECF No. 24.) TDA subsequently filed objections to the report and recommendation, in which it argued that the court should apply the "joint employer" test instead of Darden. (ECF No. 25.) Upon further evaluation, the undersigned believes that the test described in Skanska is the appropriate test to apply under the facts of the instant case.

- 14 -

TDA, but instead whether the record contains any disputes of material facts regarding whether Shelby County and TDA "share or co-determine th[e] matters governing essential terms and conditions of [Towns's] employment." Sanford, 449 F. App'x at 492.

TDA argues that it is not Towns's employer for Title VII purposes because it "did not hire Plaintiff, pay Plaintiff, supervise Plaintiff on a day-to-day basis, or train Plaintiff." (ECF No. 43 at 6.) In addition, TDA asserts that Towns has not "allege[d] that the Department has the authority to transfer him, promote or demote him, grant him leave, adjust his work schedule, discipline him, or terminate his employment with Shelby County." (Id.) According to TDA, the only authority it has over Shelby County is the contractually provided ability to audit ten percent of Shelby County's inspectors and conduct a follow up inspection if the inspector fails. (Id.) In his response, Towns argues that TDA is his employer because it is responsible for training him, which is evidenced by the fact that TDA "provided the timeline and guidelines for the 'Retail Food Safety Training Curriculum.'" (ECF No. 47-1 at 2.) Towns also contends that TDA's "Administrator Shanna Lively and Compliance Officer Ronald Murphy held a 2-hour training session at the Shelby County Health Department Conference Room on August 31, 2015." (Id.) At that training session, Towns and other

Shelby County inspectors were taught about new state laws. (Id.) Lastly, Towns argues that TDA employees have sent him emails instructing him to take certain work-related actions.[4] (ECF No. 46 at 16, 41-43.)

At the motion to dismiss stage, the court considered the allegations in Towns's complaint along with the various attachments filed by Towns in deciding whether TDA qualifies as his employer. However, at this summary judgment stage, Towns can no longer rely on those allegations and attachments, but instead must produce evidence to demonstrate a genuine issue of disputed fact. The record before the court lacks any evidence that TDA hired Towns or that it can fire or demote him. There is likewise no evidence that TDA pays Towns or provides him with benefits; instead, it is reasonable to conclude that Shelby County (Towns's direct employer) compensates him. Finally, no evidence exists demonstrating that TDA has any ability to set or control his work schedule or supervise his daily activities. See Sanford, 449 F. App'x at 492. ("The major factors in th[e] [joint employer] determination are the ability to hire, fire,

---

[4] These three emails are attached as exhibits to a separate summary judgment motion filed by Towns on December 21, 2018. (ECF No. 46.) The emails are not included as exhibits to his response in opposition to TDA's motion for summary judgment. However, because Towns is *pro se* and references his summary judgment brief in his response, the court will consider these emails in deciding the instant motion.

and discipline, affect compensation and benefits, and direct and supervise performance.").

The only evidence indicating that TDA has some measure of authority over Shelby County inspectors is the contract between TDA and Shelby County. This contract authorizes TDA to annually audit ten percent of Shelby County's inspectors and prevents inspectors from conducting further inspections if they fail the audit. (ECF No. 43-1 at 5 ¶ A.5.a.(3).) The inspector's ability to audit will be reinstated after passing a follow-up audit or if TDA "approves the inspector for Inspections based on [Shelby County's] communicated efforts to improve the inspector's performance and its confidence that the inspector may perform inspection under th[e] Contract to a satisfactory level." (Id.) While TDA also directs Shelby County on how to train the inspectors, Shelby County is ultimately responsible for training its inspectors and ensuring that inspections are conducted in accordance with Tennessee law. None of the authority granted to TDA, pursuant to the contract between Shelby County and TDA, demonstrates that TDA "share[s] or co-determine[s] th[e] matters governing essential terms and conditions of [Towns's] employment." [5] Sanford, 449 F. App'x at

---

[5] The three emails attached to Towns's summary judgment motion were sent to him by "Tammy Miller . . . on behalf of HS Agent HealthSpace." (ECF No. 46 at 41-43.) Miller, who is presumably a TDA employee, asks Towns questions that relate to audits he

- 17 -

492. Because there is no genuine dispute as to any material fact as to whether TDA is Towns's employer, summary judgment is appropriate.[6]

## III. RECOMMENDATION

For the reasons above, it is recommended that TDA's Motion for Summary Judgment be granted and that this case be dismissed.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

February 21, 2019
Date

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE**

---

apparently conducted and requests follow up actions. (Id.) The court finds that these three emails are insufficient to create a genuine issue of disputed fact.

[6]Even if the court were to apply the Darden test, it would ultimately reach the same conclusion that TDA is not Towns's employer for Title VII purposes.  Like the test applied in Skanska, "[t]he crux of Darden's common law agency test is 'the hiring party's right to control the manner and means by which the product is accomplished.'" Weary v. Cochran, 377 F.3d 522, 525 (6th Cir. 2004) (quoting Darden, 503 U.S. at 323).  There is no evidence that TDA exercises this control over Towns.  As for the factors present in Darden but absent from Skanska, Towns fails to point to any evidence supporting the conclusion that those factors are satisfied.  Further, the undersigned recognizes that at the motion to dismiss stage it was recommended that, based upon the allegations in Town's complaint, Towns had plausibly pleaded that TDA is his employer. At this summary judgment stage, Towns may no longer rely on the allegations in his complaint and must instead point to specific evidence supporting these allegations.

**SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**